# United States Court of Appeals for the Federal Circuit

---

**IN RE: CHARGER VENTURES LLC,**
*Appellant*

---

2022-1094

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 88340651.

---

Decided: April 13, 2023

---

WILLIAM D. DAY, William Day Law Group, Bethesda, MD, argued for appellant Charger Ventures LLC.

THOMAS L. CASAGRANDE, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Katherine K. Vidal. Also represented by CHRISTINA J. HIEBER, THOMAS W. KRAUSE, MONICA BARNES LATEEF, FARHEENA YASMEEN RASHEED, MEREDITH HOPE SCHOENFELD.

---

Before PROST, REYNA, and STARK, *Circuit Judges*.

REYNA, *Circuit Judge*.

Charger Ventures LLC appeals from a Trademark Trial and Appeal Board decision that denied registration of Charger's trademark SPARK LIVING on grounds of

likelihood of confusion with an earlier registered trademark, SPARK. On appeal, Charger challenges the Board's likelihood of confusion determination. Because the Board's determination is supported by substantial evidence, we affirm.

BACKGROUND

Appellant Charger Ventures LLC ("Charger") filed intent-to-use application No. 88,340,651 to register SPARK LIVING on the Principal Register in International Class 036 for leasing of real estate; real estate listing; real estate service, namely, rental property management. J.A. 22–27. The examining attorney refused registration under Trademark Act Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), on grounds of a likelihood "to cause confusion, or to cause mistake, or to deceive with an earlier registered mark." J.A. 30–32.

The earlier registered mark, SPARK, was registered for "[r]eal estate services, namely, rental brokerage, leasing and management of commercial property, offices and office space." Appellee's Br. 2; J.A. 33. The examining attorney noted that (1) "a comparison of the respective marks show[s] that they are comprised either in whole or significant part of the term 'SPARK,'" J.A. 30, and (2) both marks are for real estate services, with "overlapping identifications of leasing and rental management services," J.A. 31. Charger then amended its description of services to only cover *residential* real estate services. J.A. 125. In the amendment, Charger asserted that the examining attorney failed to compare the marks in their entireties—SPARK (hereinafter, "registrant's mark") versus SPARK LIVING. J.A. 127–28.

The examining attorney issued a new office action, requiring Charger to disclaim "LIVING" because "adding a term to a registered mark" or "[i]ncorporating the entirety of one mark within another does not obviate the similarity between the compared marks . . . nor does it overcome a

likelihood of confusion." J.A. 138. Thus, the examining attorney found, the marks had similar sound, appearance, connotation and commercial impression and similarity in just one element of a mark, alone, is sufficient to find likelihood of confusion. *Id.* Charger filed a response, disclaimed the term "LIVING," and again amended the description to "specifically" exclude commercial property and office space—the services of registrant's mark. J.A. 200, 209–10. On July 13, 2020, the examining attorney issued a final office action maintaining the refusal. J.A. 290–93. Charger appealed the refusal to the Trademark Trial and Appeal Board ("Board") and filed a request to reconsider the final office action, which stayed the appeal. Appellant's Br. 6. The Board denied the request and resumed the appeal. *Id.* The Board affirmed the refusal to register Charger's mark after finding a likelihood of confusion. J.A. 2.

BOARD DECISION

The Trademark Act prohibits registration of a mark that "so resembles a registered mark as to be likely, when used on or in connection with the goods or services of the applicant, to cause confusion, mistake, or to deceive." 15 U.S.C. § 1052(d) (also called Section 2(d)). To determine whether a likelihood of confusion exists under section 2(d), the Board considers the so-called *DuPont* factors in its analysis. *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973) (reciting thirteen factors to be considered, referred to as "*DuPont* factors").

In this case, the Board addressed five of the *Dupont* factors: (1) similarity or dissimilarity of the marks, (2) similarity of dissimilarity of the nature of the goods or services, (3) the similarity or dissimilarity of established, likely-to-continue trade channels, (4) the conditions under which and buyers to whom sales are made, and (5) strength of the mark (e.g., the number and nature of similar marks in use on similar goods). J.A. 2–19. The Board found that two of

the factors were "key factors": the similarity or dissimilarity of the marks as well as the goods or services. J.A. 3 (citing *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103 (CCPA 1976)).

First, the Board considered the similarity or dissimilarity of the services. J.A. 3–9. Noting that the services need not be "identical or even competitive" but merely "related in some manner," J.A. 3, the Board found that the examining attorney had submitted persuasive evidence of third-party registrations from the trademark search system, TESS, that showed that residential real estate services and commercial real estate services "may emanate from a single source under a single mark," J.A. 4. The examining attorney had submitted website evidence showing commercial and residential real estate services offered under the same or similar marks. *Id.* Noting that use-based third-party registrations alone are not evidence that the public is familiar with them, the Board found that this evidence has "some probative value" as they "suggest" that the services are related and can be offered under the same mark. *Id.* at 7. On this basis, the Board found that the third-party registrations and website evidence sufficiently showed relatedness of the services. *Id.* at 9.

Second, the Board considered the trade channels. J.A. 9–11. The Board presumed that the services would be marketed in "all normal trade channels," because neither Charger nor the registrant restricted their respective trade channels. *Id.* at 9. The Board considered the examining attorney's Internet evidence that commercial and residential real estate services can be offered by the same entity, either on different or the same website(s). *Id.* at 10. After assessing that evidence, the Board found "some overlap" in the commercial and residential trade channels. *Id.* at 11.

Third, the Board considered the conditions of sale. J.A. 11. The Board acknowledged that the services offered are "not average consumer services" and that the purchaser

would exercise elevated care due to the nature and cost of real estate services. *Id*. at 12 (citing *Elec. Design & Sales Inc. v. Elec. Data Sys. Corp*., 954 F.2d 713, 718 (Fed. Cir. 1992)). Nevertheless, the Board noted that "even careful or sophisticated purchasers are not immune from source confusion." *Id*. (citing *In re Rsch. Trading Corp*., 793 F.2d 1276, 1279 (Fed. Cir. 1986)). Without assigning weight to the factor, the Board found that the "classes of consumers may overlap." J.A. 11.

Fourth, the Board considered the strengths of the marks. *Id*. at 12. Charger submitted a third-party registration of the mark SPARK LABS to show that SPARK is conceptually weak, but the Board was unpersuaded. *Id*. at 13. Charger submitted a chart reflecting marketplace uses of the term SPARK in real estate services. *Id*. at 13–14. The Board ultimately found that the use-based evidence was "probative of commercial weakness" but noted that the term SPARK was not used alone in these examples. *Id*. at 14. So, while the evidence shows that there is "some commercial weakness," the Board found that "even weak marks are entitled to protection." *Id*. at 15 (citing *King Candy Co. v. Eunice King's Kitchen, Inc*., 496 F.2d 1400, 1401 (CCPA 1974) ("Confusion is confusion. The likelihood thereof is to be avoided, as much between 'weak' marks as between 'strong' marks, or as between a 'weak' and a 'strong' mark.")). The Board also found Charger's next chart, which showed third-party registrations of different entities using similar registered marks in the real estate industry, not probative, as such evidence typically is before the Board. J.A. 16 (citing *In re Joel Embiid*, 2021 WL 2285576, at *17 (TTAB 2021)). The Board found some commercial weakness in the mark SPARK for real estate services. J.A. 15.

Fifth, the Board considered the similarity or dissimilarity of the marks. J.A. 17. Under this factor, the Board assessed the appearance, sound, connotation, and overall commercial impression of the marks—not in a side-by-side

comparison—to determine whether the marks are suffi-
ciently similar in their overall impression as to cause con-
fusion. *Id.* (citing *Palm Bay Imps. Inc. v. Veuve Clicquot
Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371–
72 (Fed. Cir. 2005); *Coach Servs.*, *Inc. v. Triumph Learning
LLC*, 668 F.3d 1356, 1368 (Fed. Cir. 2012)). The Board con-
sidered the fact that both marks comprise the term
SPARK. J.A. 17. It also noted that the term LIVING in
Charger's mark is both descriptive of real estate services
and disclaimed, thereby making that term subordinate to
SPARK and less significant. *Id.* (citing *In re Detroit Ath-
letic Co.*, 903 F.3d 1297, 1305 (Fed. Cir. 2018)). As the first
term or word of Charger's mark, SPARK is the portion the
Board found most likely to be remembered by consumers.
*Id.* at 18. It also noted that Charger's mark "incorporates
Registrant's entire mark." *Id.* (citing *Presto Prods. Inc. v.
Nice-Pak Prods., Inc.*, 1988 WL 252340, at * 3 (TTAB 1988);
*Coca-Cola Bottling Co. v. Seagram & Sons, Inc.*, 526 F.2d
556, 557 (CCPA 1975)). The Board found that SPARK
LIVING is "overall very similar to SPARK" and that the
differences between the marks "do not outweigh the strong
similarities" when evaluated as a whole. *Id.* at 19. The
Board found that consumers encountering Charger's mark
are likely to mistakenly believe that the mark represents a
variation on the registered mark. *Id.*

The Board concluded that, despite some commercial
weakness in the term SPARK and sophistication of con-
sumers, there was "insufficient evidence in the record" to
overcome the "close similarity" of the marks and related-
ness of the services. *Id.*

Charger timely appealed. We have jurisdiction under
12 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

Likelihood of confusion is a question of law with under-
lying factual inquiries based on the *DuPont* factors. *Stra-
tus Networks, Inc. v. UBTA-UBET Commc's Inc.*, 955 F.3d

994, 998 (Fed. Cir. 2020). We review the legal question of likelihood of confusion de novo. *On-Line Careline, Inc. v. America Online, Inc.*, 229 F.3d 1080, 1084 (Fed. Cir. 2000). We review the Board's weighing of the *Dupont* factors de novo, *QuickTrip West, Inc. v. Weigel Stores, Inc.*, 984 F.3d 1031, 1034 (Fed. Cir. 2021), but we review the Board's factual findings on each *Dupont* factor for substantial evidence, *Hylete LLC v. Hybrid Athletics, LLC*, 931 F.3d 1170, 1173 (Fed. Cir. 2019). Substantial evidence is "more than a mere scintilla"—"it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 216–17 (1938). The possibility of drawing two inconsistent conclusions from the evidence does not prevent the Board's findings from being supported by substantial evidence. *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

In any given case, different *DuPont* factors may play a dominant role and some factors may not be relevant to the analysis. *Bose Corp. v. QSC Audio Prods., Inc.*, 293 F.3d 1367, 1370 (Fed. Cir. 2002). The Board is required to consider each factor for which it has evidence, but it can focus its analysis on dispositive factors. *In re Dixie Restaurants, Inc.*, 105 F.3d 1405, 1406–07 (Fed. Cir. 1997). A single *DuPont* factor may, for example, be dispositive of the likelihood of confusion analysis. *Kellogg Co. v. Pack'em Enters., Inc.*, 951 F.2d 330, 333 (Fed. Cir. 1991). The weight given to each factor depends on the circumstances of each case. *Dixie Restaurants, Inc.*, 105 F.3d at 1407.

Charger challenges each factual finding that the Board made on the *DuPont* factors. Appellee's Br. 13. At bottom, Charger asks us to reweigh the evidence considered by the Board, which is not the role of this court. *Stratus Networks*, 955 F.3d at 998. We instead evaluate whether the evidence relied on by the Board is supported by substantial evidence. *Henkel Corp. v. Procter & Gamble Co.*, 560 F.3d

1286, 1290 (Fed. Cir. 2009). We find that the Board's factual findings here are supported by substantial evidence.

First, Charger makes a series of arguments related to the Board's comparison of the marks when it assessed the appearance, sound, connotation and commercial impression. To Charger, the Board dissected its mark—which this court has prohibited doing—when it gave no meaningful weight to the term "LIVING." Appellant's Br. 20–21 (citing *China Healthways Inst., Inc. v. Xiaoming Wang*, 491 F.3d 1337, 1340 (Fed. Cir. 2007)). Charger argues that, if the Board had evaluated the marks in their entireties, it would not have found a likelihood of confusion, nor would it have denied registration based on its incorporation of another mark. Appellant's Br. 21–22. In other words, keeping the mark as SPARK LIVING would arguably result in a different appearance, sound, and meaning. *Id.* at 23. Subsumed in this argument is Charger's challenge to the allegedly improper weight allotted by the Board to SPARK because third-party use of the term should demonstrate weakness. *Id.* at 24.

Appellee, the Director of the USPTO (hereinafter, "the Director"), notes that Charger disclaimed the word LIVING in its mark, thereby giving it less source-identifying significance and making it subordinate to the term SPARK. Appellee's Br. 14 ("where terms are disclaimed, the disclaimer supplies 'rational reasons for giving those terms less weight in the analysis'") (citing *Detroit Athletic*, 903 F.3d at 1305).

Disclaimer of a word in an application to register a mark has "no legal effect on the issue of likelihood of confusion" because the public is unaware what words have been disclaimed. *In re Nat'l Data Corp.*, 753 F.2d 1056, 1059 (Fed. Cir. 1985); *see also Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 1243 (Fed. Cir. 2004). Thus, the Board must consider the mark in its entirety. *Detroit Athletic*, 903 F.3d at 1305 (citation omitted); *see also QuikTrip West,*

984 F.3d at 1035. Here, as the Director points out, the Board explicitly compared the marks "in their entireties" and based its findings on the "overall commercial impression engendered by the marks as a whole." J.A. 17–19. So, while the Board must consider the disclaimed term, an additional word or component may technically differentiate a mark but do little to alleviate confusion. *Detroit Athletic*, 903 F.3d at 1304–05. We have previously found no error with the Board's decision to focus on dominant portions of a mark. *Id*. at 1305. We find that the Board's determination on this factor is supported by substantial evidence.

Second, Charger argues that the nature of the services described by the marks are distinct. The distinction between residential property services (Charger's mark) and commercial real estate services (registrant's mark) are "substantially different." Appellant's Br. 25. Because registrant's mark is limited and cannot be amended to include residential services, Charger argues that it cannot gain protection outside of that limited description. *Id*. at 25–26. Charger asserts that nothing in the record suggests that the companies offering both residential and commercial services have limited themselves like the parties have here. *Id*. at 26–27. Relatedly, Charger argues that the trade channels significantly differ. *Id*. at 27.

The Director contends that both Charger and registrant offer real estate property management and leasing services and the record shows "dozens of registrations" that cover both residential and commercial real estate services. Appellee's Br. 17. As for trade channels, the Director argues that the Board "properly found that neither the application nor the registration sets forth any limitation on the trade channels through which the services are offered, so the presumption applies." *Id*. at 19. Because the record shows that companies are known to offer both residential and commercial services under the same mark and, often, on the same website, we find that substantial evidence supports the Board's finding on these factors.

Third, Charger argues that the Board's finding on the class of purchasers was improper because the consumers of Charger's services are substantially different from registrant's services. Appellant's Br. 28–29. Charger argues that "[p]eople looking to buy a home or a condominium are likely to take their time and make an educated decision before entering into these purchases because of the important impact these decisions can have on their lives . . .". *Id.* at 29. The Director asserts that Charger fails to identify where, in the record, it has demonstrated that residential property owners are distinct consumers from commercial owners. Appellee's Br. 21. Indeed, the Director argues that "people who seek commercial real estate services *live* somewhere." *Id.* (emphasis in original).

As the Board explained, careful or sophisticated consumers are not immune from source confusion. J.A. 12 (citing *In re Rsch. and Trading Corp.*, 793 F.2d at 1279 ("That the relevant class of buyers may exercise care does not necessarily impose on that class the responsibility of distinguishing between similar trademarks for similar goods.")). Paired with the potential overlap of consumers, substantial evidence supports the Board's determination on this factor.

Fourth, as for the factor regarding the number and nature of similar marks in use on similar goods, Charger reiterates its evidence of third-party use showing variations of the term SPARK in trademarks as evidence of weakness. Charger argues that weakness of the mark "is paramount in the likelihood of confusion analysis." Appellant's Br. 20. The Director argues that all marks on the principal register are presumed valid and distinctive and that even weak marks are entitled to protection. Appellee's Br. 23 (citing *Conde Nast Publ'ns, Inc. v. Miss Quality, Inc.*, 507 F.2d 1404, 1406 (CCPA 1975)).

Here, the Board agreed that Charger's evidence of third-party use was "probative" and that the term SPARK accordingly has "some" level of weakness in real estate

services.  J.A. 14–15.  But it found such evidence was not enough to render it unprotectable.  J.A. 16.  We agree.  In this case, Charger submitted one third-party registration as evidence that SPARK is conceptually weak, J.A. 13, and about twenty-four third-party uses of a SPARK-formative mark, J.A. 15.  Other cases relied upon by the Board have included examples of third-party uses of a term that the Board ultimately found relevant to its determination of a likelihood of confusion.  *See Jack Wolfskin Ausrustung Fur Draussen GmbH & Co. KGAA v. New Millennium Sports, S.L.U.*, 797 F.3d 1363, 1373 n.2 (Fed. Cir. 2015) (finding that fourteen third-party uses and registrations were probative of weakness); *Juice Generation Inc. v. GS Enters. LLC,* 794 F.3d 1334, 1337 n.1 (Fed. Cir. 2015) (finding twenty-six third-party uses or registrations incorporating the relevant phrase probative of weakness).  Substantial evidence thus supports the Board's determination on this factor.

Furthermore, an "ex parte proceeding is not the proper forum" for a trademark applicant to launch an attack on a registered mark to try to narrow the scope of services described.  *Detroit Athletic*, 903 F.3d at 1309.  "The relevant inquiry in an ex parte proceeding focuses on the goods and services *described in the application and registration*."  *Id.* at 1307.  Given that this is a proceeding between Charger and the PTO, the registrant of SPARK is not a party and cannot defend the validity of its trademark rights.  Appellee's Br. 23; *see also In re Calgon Corp.*, 435 F.2d 596, 598 (CCPA 1971) (finding that a collateral attack on the validity and ownership of a registration without seeking formal cancellation proceedings is improper in an ex parte proceeding).  A certificate of registration of a mark on the principal register is "prima facie evidence of [its] validity," 15 U.S.C. § 1057(b), and the Board properly considered this when evaluating the registered mark's potential weakness in an ex parte proceeding.

Separately, Charger asserts that the Board failed to indicate the weight it accorded to the factors and, consequently, its analysis lacks substantial evidence. Appellant's Br. 30. Assigning weight to the factors is typically the Board practice. *See, e.g., QuikTrip West,* 984 F.3d at 1036–37 ("We finally turn to the Board's weighing of the *DuPont* factors . . . Analysis of the *DuPont* factors constitutes a balancing test."). While we review the Board's weighing of the *DuPont* factors de novo, *see QuikTrip West,* 984 F.3d at 1035–37, it is important to our review that the Board itself weigh the *DuPont* factors used in its analysis *and* explain the results of that weighing. In order for this court to exercise its duty of review, and to do so meaningfully, the Board must provide a reasonable explanation for its findings, explaining the weight it assigned to the relevant factors. *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("[C]ourts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review."). We will, nevertheless, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Here, the agency's path may be reasonably discerned. Based on the record as a whole, there is sufficient evidence from its assessment of the relevant *DuPont* factors to support the Board's finding of a likelihood of confusion of Charger's mark SPARK LIVING. Accordingly, we affirm.

## CONCLUSION

We hold that the Board's decision is supported by substantial evidence. Accordingly, we affirm the Board's refusal to register based on the determination of a likelihood of confusion.

## AFFIRMED

### COSTS

No costs.